IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROBERT CRUZ, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| | § | |
| v. | § | C.A. NO. B-04-216 |
| | § | |
| | § | |
| CHARLES JOHNSON, | § | |
| | § | |
| DEFENDANT. | § | |

**OPINION AND ORDER**

BE IT REMEMBERED that on June 14, 2005, the Court **GRANTED** Defendant's Motion to Dismiss [Dkt. No. 5].

**I.  Introduction and Factual Background**

Plaintiff originally filed the present claim for breach of oral contract in the 103rd Judicial District Court of Willacy County, Texas.  Defendant removed the action on December 22, 2004, pursuant to 28 U.S.C. § 1441, contending the Court has diversity jurisdiction because the parties are completely diverse and the damages sought exceed the requisite $75,000. *See* 28 U.S.C. § 1332.  Plaintiff alleges he was employed by oral contract by Charles Johnson in connection with a seasonal packing operation located in New Mexico.  Plaintiff alleges arrangements for the seasonal packing operation, such as the preparation and maintenance of Plaintiff's vehicles, were made prior to Plaintiff's departure for New Mexico each season. *See* Pl's Original Petition, ¶ 5.  Plaintiff further alleges that at the conclusion of each season, he and Defendant would "settle the account between them after allowances for advances received by Plaintiff during the season."  *Id.*  Plaintiff brought the present claim when Defendant allegedly refused to pay "certain items" to Plaintiff for work performed during the

1

season.  *Id.*

Defendant filed his Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) in which he argues he is a resident of Arizona and has not had sufficient contacts with Texas making him subject to this Court's jurisdiction. Moreover, Defendant argues he did not purposefully direct his activities to the State of Texas, and Plaintiff's cause of action arose not from Defendant's contacts with Texas, but rather from an alleged debt relating to work performed in New Mexico.  *See* Def's Motion to Dismiss, at pp. 2-3 [Dkt. No. 5].  Defendant additionally argues Plaintiff performed all services in New Mexico, all negotiations were conducted in New Mexico, and all payments were made to Plaintiff in New Mexico.  *See id.*, at p. 3.  Furthermore, Defendant argues he has not had continuous or systematic contacts with Texas, and thus both specific and general jurisdiction are lacking in this case.  *See id.*

As evidence supporting the above arguments, Defendant filed the affidavit of Charles Johnson, the Defendant in this matter.  *See* Def's Motion for Leave to File Affidavit, Ex. A [Dkt. No. 7].  In this affidavit, Johnson states he is an independent broker who arranges the sale of farm produce from farmers in New Mexico.  *See id.*  Defendant avers that he does not advertise in Texas, is not a farmer or grower and does not own any produce shipped inside or outside of Texas, does not own or lease trucks to haul farm produce into Texas, does not make or perform contracts in Texas, and does not conduct sales of farm produce in Texas. *See id.*

Plaintiff filed a skeletal response to Defendant's Motion to Dismiss on February 15, 2005.  *See* Dkt. No. 8].  Plaintiff averred in his affidavit that each year before the produce season began, Defendant and Plaintiff conversed telephonically from Texas and made arrangements concerning labor, equipment, and supplies.  *See* Affidavit [Dkt. No. 9].  Plaintiff attaches to his affidavit copies of loading orders in which produce was shipped to various cities in Texas.  This evidence, Plaintiff contends, demonstrates Defendant shipped produce throughout Texas, and thus proves Defendant had more than minimal contacts with Texas during the period of Plaintiff's employment.

2

Plaintiff originally requested an extension of time to respond to Defendant's motion and permission to conduct discovery limited to the jurisdictional issue.  At the initial pretrial conference, the Court granted Plaintiff an extension of time and allowed the parties one month to conduct jurisdictional discovery until March 31, 2005.  On March 28, 2005, Plaintiff filed a second motion requesting a further extension of time in which to demonstrate Defendant was doing business in Texas because of litigation demands placed on the attorney.  *See* Pl's Motion for Extension of Time, at p. 1 [Dkt. No. 17].  On March 30, 2005, the Court denied Plaintiff's motion for more time because Plaintiff had ample time to develop any jurisdictional facts necessary to refute Defendant's assertion that no personal jurisdiction exists in this case. *See* Order [Dkt. No. 22].

## II.  Standard for Dismissal for Lack of Personal Jurisdiction

When a defendant properly seeks dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that jurisdiction over the defendant exists.  *Central Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003); *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 204 (5th Cir. 1996).  If an evidentiary hearing pertaining to the defendant's motion is not held, the plaintiff need only present sufficient facts to establish a *prima facie* case supporting personal jurisdiction.  *Central Freight Lines*, 322 F.3d at 380; *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).  In doing so, the plaintiff may produce affidavits and other documentation recognized as a method of discovery.  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  Additionally, "all reasonable inferences . . . are drawn in favor of the prevailing plaintiff."  *Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320, 327 (5th Cir. 1996).  The Court shall accept as true the plaintiff's uncontroverted and non-conclusory allegations. *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 343 (5th Cir. 2004); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (finding that conclusory allegations, even if uncontroverted, need not be credited).

## III.  Legal Discussion and Analysis of Personal Jurisdiction

3

The Court has personal jurisdiction over a nonresident defendant if the nonresident is amenable to service of process under Texas's long-arm statute and the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *See Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). In Texas, the long-arm statute extends to the limits of the Due Process Clause, and thus any federal constitutional analysis melds with an analysis of the long-arm statue. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-17.069 (West 1997); *CSR, Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). Due process is satisfied in the context of personal jurisdiction when the defendant has "purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with that forum state." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 315-17, 66 S.Ct. 154, 158 (1945)). Additionally, the exercise of personal jurisdiction must not "offend 'traditional notions of fair play and substantial justice.'" *Wilson*, 20 F.3d at 647 (quotation omitted).

### A.  Minimum Contacts - Specific Jurisdiction

Minimum contacts may be established if there exists either specific personal jurisdiction or general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868 (1984); *Wilson*, 20 F.3d at 647; *Gundle*, 85 F.3d at 205. Specific jurisdiction arises when the defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *See Gundle*, 85 F.3d at 205. To support specific jurisdiction, Plaintiff states in his affidavit that "[e]ach year, before the produce season began, Defendant and I would make arrangements over the phone to get a headstart on each season's requirements for labor, equipment and supplies. All of these telephone conversations were conducted in Texas." Affidavit [Dkt. No. 9]. Plaintiff's statement does not conflict with any evidence or statements made by the Defendant.

Many cases in the Fifth Circuit involving claims brought by migrant farm workers against their employers, in which the courts found personal jurisdiction existed, concern employers who specifically recruited workers in Texas. *See, e.g., Moreno v. Milk Train,*

4

*Inc.*, 182 F.Supp.2d 590, 594 (W.D. Tex. 2002) (holding specific jurisdiction existed where defendant contacted a service to recruit workers in Texas and provided the service with the terms and conditions of employment for plaintiffs); *Astorga v. Connleaf*, 962 F.Supp. 93, 94 (W.D. Tex. 1996) (holding personal jurisdiction existed where defendant used Texas based contractor to recruit and hire workers); *Runnels v. TMSI Contractors, Inc.*, 764 F.2d 417, 421 (5th Cir. 1985) (holding there was sufficient purposeful activity with the forum state to confer jurisdiction where defendant recruited plaintiffs by advertising in the forum state's newspapers, initiated contact with plaintiff in the forum state, and mailed a sample and actual employment contract along with other documents to plaintiff in the forum state); *Dotson v. Fluor Corp.*, 492 F.Supp. 313, 317 (W.D. Tex. 1980) (holding defendant purposefully availed itself when employer defendant used agent to recruit Texas employees to work in Saudi Arabia).

In *Aviles v. Kunkle*, however, the Fifth Circuit held there was no personal jurisdiction over the nonresident defendants because the "[d]efendants' only contact with Texas was one telephone call and one letter which merely advised plaintiffs of the start date of the employment they had already accepted the previous summer in Ohio." 978 F.2d 201, 205 (5th Cir. 1992). Likewise, in *Flores v. A.C., Inc.*, the district court found specific jurisdiction did not exist where there was no direct recruitment in the forum state and the telephonic employment agreement arose from the mere fortuity that the plaintiffs were Texas residents. *See* 2003 WL 1566507, at *9 (W.D. Tex. Mar. 5, 2003) (finding no personal jurisdiction where independent contractor unilaterally recruited workers). Additionally, in *Flores*, the actual employment contracts were not signed in the forum state, but rather in the state where employment was actually conducted. *See id.* (finding it also significant that plaintiffs did not sign employment contracts until they reached the state in which they eventually worked); *see also Williams v. Castro*, 21 F.Supp.2d 691, 693-94 (S.D. Tex. 1998) (holding no personal jurisdiction where employer defendant did not specifically target the Texas market).

In the case now before this Court, Plaintiff simply states in his affidavit and

complaint that arrangements were made via the telephone prior to the commencement of the produce packing season.  Plaintiff does not state Defendant recruited him specifically for employment in Texas, that a contract was formed in Texas, that Defendant made an offer of employment in Texas, or visited Texas to meet with Plaintiff or negotiate the terms of the contract in Texas.  The few telephone calls Plaintiff cites are not enough to confer personal jurisdiction.  *See Williams*, 21 F.Supp.2d at 694 (stating "it is irrelevant how many times Defendant called Plaintiff to negotiate an employment contract" where Plaintiff made the first contact with the Defendant and recruitment occurred outside the forum state); *Downs v. Red River Shipping Corp.*, 1994 WL 148729, at *5 (E.D. La. Apr. 18, 1994) (finding no personal jurisdiction because contacts with forum state were insufficient where the contacts allegedly gave rise to the breached employment contract and Defendant had telephoned Plaintiff in Louisiana and offered Plaintiff a job, but there was no evidence of advertising in the forum state or visits to the forum state for interviews,); *Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001) ("There have been other cases where mere communications or negotiations with a resident of the forum state were not enough to subject nonresident defendants to the forum state's jurisdiction); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (holding communications to Texas were insufficient to confer specific jurisdiction where communications rested on fortuity that plaintiff was a resident of the forum); *Barnstone v. Congregation Am. Echad*, 574 F.2d 286, 288-89 (5th Cir. 1978) (per curiam) (determining negotiations by phone and mail with Texas architect concerning construction of synagogue in Maine did not confer personal jurisdiction over nonresident defendant).  *Cf. Brown v. Flowers Indus.*, 688 F.2d 328, 332-33 (5th Cir. 1982) (holding that a single telephone call, the content of which was alleged to constitute a tort, initiated by the defendant was sufficient to confer personal jurisdiction).

Moreover, the breach of contract of which Plaintiff complains is alleged to have occurred in New Mexico–"At the conclusion of each season, Plaintiff and Defendant would settle the account between them after allowances for advances received by Plaintiff during the season.  However, the Defendant made it a practice to unilaterally deduct and refuse to

pay certain items which were owed to Plaintiff for his work on behalf of Defendant." Pl's Original Petition, ¶ 5. The alleged breach of the oral contract occurred in New Mexico at the conclusion of the season when Defendant allegedly refused to pay Plaintiff the agreed amount. The fact that an oral contract existed and Defendant entered into the alleged contract with a Texas resident is not enough to confer personal jurisdiction. *See Dickson Marine, Inc. v. Panalpina*, 179 F.3d 331, 336 (5th Cir. 1999) (holding contract between resident and nonresident does not automatically confer minimum contacts for purpose of personal jurisdiction); *Colwell Realty Investments v. Triple T Inns*, 785 F.2d 1330, 1334 (5th Cir. 1986) (holding that merely contracting with resident of the forum state is insufficient to confer personal jurisdiction on nonresident).

Plaintiff has not pled, nor provided any evidence or allegation that Defendant specifically recruited Plaintiff in Texas to work in New Mexico, that Defendant formed a contract with Plaintiff in Texas, or that Defendant otherwise negotiated a contract or met with Plaintiff in Texas. Plaintiff's sole evidence of specific jurisdiction are the yearly telephone conversations with Plaintiff prior to the commencement of the produce packing season. Plaintiff, therefore, has not made a *prima facie* showing that Defendant "purposefully directed" its activities to the residents of the forum. *See Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472 (1984). Nor did Defendant conduct business in Texas or otherwise avail itself of the protections or privileges of conducting activities in Texas, the forum state. *See Guidry v. United States Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999). It cannot be said that this Defendant "should reasonably [have] anticipate[d] being haled into court" in Texas. *Latshaw*, 167 F.3d at 211. The specific facts of this case do not support sufficient minimum contacts with Texas to subject Defendant to the jurisdiction of this court.

### B.  Minimum Contacts - General Jurisdiction

Personal jurisdiction may alternatively exist when the defendant engaged in "systematic and continuous" activities in the forum state, even if the contacts are unrelated to the cause of action. *See Helicopteros*, 466 U.S. at 414 n.9, 104 S.Ct. at 1872 n.9;

*Wilson*, 20 F.3d at 647; *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999)
(citation omitted).  Plaintiff also attempts to make a *prima facie* showing of personal
jurisdiction by demonstrating Defendant has systematic and continuous activities in Texas.
The loading orders Plaintiff submits, which demonstrate shipments of produce were made
to various locations in Texas, are uncontroverted.  Defendant, however, explains that he is
an independent produce broker who links produce sellers with produce buyers, but
Defendant does not himself farm or grow produce, own or lease any trucks that ship the
produce into Texas, advertise in Texas, and does not make or perform contracts in Texas.

Even taking the facts presented by Plaintiff as true, which the Court must for the
purpose of establishing personal jurisdiction, Defendant's contacts with Texas are not
substantial, continuous, or systematic enough to establish general jurisdiction.  The Court
finds the case of *Central Freight Lines, Inc. v. APA Transport Corp.* instructive.  322 F.3d
376 (5th Cir. 2003).  In *Central Freight Lines, Inc.*, APA, a freight delivery company located
in New Jersey, was sued for breach of contract, among other causes of action, by CFL, a
freight delivery company located in Texas.  *See id.* at 379.  The two freight delivery
companies entered into an "interline agreement" in which each carrier could use the other
company's services in their geographic region of operation.  *See id.*  APA had federal
operating authority in Texas, but had never registered to do business in Texas, never
maintained any business office or records in Texas, and never paid franchise taxes in
Texas.  *See id.* at 381.  APA did, however, routinely arrange and receive interline
shipments to and from Texas, and sent sales people to Texas on a regular basis to
develop business, negotiate contracts, and service national accounts.  *See id.*  APA had
never "actually operated any trucks of picked up or delivered any freight in Texas.  Even if
APA's contacts with the State of Texas ha[d] been, in some sense 'continuous and
systematic,' APA's activities, ' *in toto*,' [were] clearly not substantial enough to justify
subjecting APA to suit in . . . Texas based on a theory of general personal jurisdiction."  *Id.*

Similarly, in this case, despite the fact that Defendant arranged for the sale of
produce into Texas, his position and job as an independent farm produce broker, without

more, does not amount to the "purposeful availment of the privilege of conducting activities in Texas such as to invoke the benefits and protections of Texas law." *Arkwright Ins. Co. v. Transportes de Nuevo Laredo, S.A. de C.V.*, 879 F. Supp. 699, 701 (S.D. Tex. 1994).  In order for a defendant's contacts to be "systematic and continuous," the contacts must be "extensive," and the test is difficult to meet.  *Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 418, 419 (5th Cir. 2001).  *See also Helicopteros*, 466 U.S. at 411-12, 104 S.Ct. at 1870-71 (holding no general jurisdiction despite "[p]urchases and related trips [to the state]" because among many factors, Helicopteros was not authorized to do business in the state, never had an agent for service of process in the state, and never had employees, offices or records in the state).   Plaintiff, therefore, has failed to make a *prima facie* showing that Defendant's contacts with the State of Texas are systematic and continuous.  *See Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 217 (5th Cir. 2000).

## IV.  Conclusion

Because the Court finds there is no basis for exercising either specific or general personal jurisdiction, it need not discuss whether notions of fairness and substantial justice are offended by the exercise of jurisdiction under the Due Process Clause.  The Court, therefore, **GRANTS** Defendant's Motion to Dismiss [Dkt. No. 5]; **GRANTS** Defendant's Motion for Leave to File Affidavit [Dkt. No. 7]; **DENIES** Plaintiff's Motion to Strike [Dkt. No. 10]; **GRANTS** Plaintiff's Motion for Leave to File Plaintiff's Response to Defendant's Motion to Dismiss [Dkt. No. 11]; and **DENIES AS MOOT** Defendant's Motion to Stay Scheduling Order Subject to Defendant's Motion to Dismiss for Lack of Jurisdiction [Dkt. No. 24].

DONE this 14th day of June, 2005, at Brownsville Texas.

_____

Hilda G. Tagle
United States District Judge

10